UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA  :

                                    :         MAG. NO. 07-2050 (JS)
    v.

                                    :

AGRON ABDULLAHU

                                    :

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR RELEASE ON BAIL

                                                                  LISA EVANS LEWIS
                                                                   Assistant Federal Public Defender
                                                                   800 Cooper Street, Suite 350
                                                                   Camden, New Jersey 08102
                                                                   (856)757-5341

                                                                   Julie A. McGrain, Esq.
                                                                   Research & Writing Attorney
                                                                   On the Brief

                                                                  Attorneys for Defendant
                                                                   Agron Abdullahu

## PRELIMINARY STATEMENT

On May 7, 2007, a single-count criminal complaint was filed against the defendant, Agron Abdullahu, charging him with aiding and abetting aliens illegally and unlawfully in the United States to possess in and affect interstate commerce, in violation of 18 U.S.C. §§ 922(g)(5) and 2. Mr. Abdullahu was brought before this Court on May 8, 2007 for his initial appearance. This Court entered a temporary Order of Detention that same day. On May 11, 2007, the Government moved for a permanent detention order pending trial in this matter. Mr. Abdullahu consented to detention until a full bail hearing can be held on May 17, 2007. In anticipation of that hearing, Mr. Abdullahu respectfully submits the following Memorandum of Law in which he details conditions of bail which can be set that will ensure both the safety of the community and his return to court.

**LEGAL ARGUMENT**

The structured system of the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, provides a mechanism to ensure that the interests of both the defendant and the community are carefully considered before release or detention is ordered. See United States v. Lernos, 876 F.Supp. 58, 59 (D.N.J. 1995). This Court is charged, under 18 U.S.C. § 3142(f), with determining whether any condition or combination of conditions exists that will reasonably assure the defendant's appearance in court and the safety of the community. The government bears the burden of establishing, by clear and convincing evidence, that detention is warranted. 18 U.S.C. § 3142(f). Section 3142(e) provides that, in certain cases enumerated in § 3142(f)(1), a rebuttable presumption arises against bail. Although the newly enacted § 3142(f)(1)(E) provides for detention pending a § 3142(f) hearing in cases involving possession of a firearm, this case does not give rise to a rebuttable presumption against bail. See United States v. Bowers, 432 F.3d 518, 519 (3d Cir. 2005) (holding that 18 U.S.C. § 922(g)(1) (illegal possession of a firearm by a convicted felon) is not a crime of violence under the Bail Reform Act).

In the absence of a presumption against bail, this Court must examine four factors in determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person including, the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;

and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). Specifically with respect to the fourth factor - danger to the community - the Third Circuit has stated that the legislative history of the Bail Reform of Act of 1984 makes clear that "the drafters aimed toward a narrowly-drafted statute with the pretrial detention provision addressed to the danger from 'a small but identifiable group of particularly dangerous defendants'." United States v. Himler, 797 F.2d at 160 (quoting, S.Rep. No. 225, 98th Cong., 1st Sess. 6-7 (1983)). See also United States v. Perry, 788 F.2d 100 (3d Cir.), cert. denied, 479 U.S. 864 (1986) (liberty interest in freedom is not violated by 18 U.S.C. § 3142(e) in authorizing the pretrial detention of "persons found to be dangerous in a very real sense; distributors of dangerous drugs and users of firearms in the commission of crimes of violence").

    **1.**    **Nature and Circumstances of the Offense Charged**

As noted above, Mr. Abdullahu has been charged with aiding and abetting illegal aliens in possessing firearms, in violation of 18 U.S.C. §§ 922(g)(5) and 2. The only evidence alleged against Mr Abdullahu in the complaint is that he allowed three illegal aliens, Dritan Duka, Eljvir Duka, and Shain Duka, to possess two firearms and ammunition lawfully belonging to him. Unlike Mr. Abdullahu, the Duka brothers have been charged, along with Mohamad Ibrahim Shnewer and Serdar Tatar, with conspiracy to commit murder, in violation of 18 U.S.C. § 1117 and unlawful possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5). Although Shnewer allegedly identified Mr. Abdullahu as a possible participant in the murder conspiracy at

4

one point in the complaint, in several other areas of the complaint, when discussing participants, Shnewer does not list Abdullah as a possible participant. The sole reference by Shnewer in Paragraph 18 of the complaint, is the only evidence in the complaint implicating Mr. Abdullahu in the conspiracy.[1] However, with respect to the others charged, the complaint alleges that each of the men charged with conspiracy to commit murder participated in recorded conversations with one or both of the confidential witnesses in this case and engaged in overt acts in furtherance of the conspiracy. Mr. Abdullahu is not alleged to have done either of these things and has not been charged with conspiracy to commit murder.

It cannot be emphasized enough that Mr. Abdullahu has only been charged with facilitating the possession of a firearms offense and nothing else. Although facilitating the possession of firearms is a serious offense, it is a non-violent offense. See Bowers, 432 F.3d at 524 (firearm possession offense does not involve a substantial risk of violence, nor is there any direct relationship between firearm possession offense and a risk of violence); see also United States v. Hull, 456 F.3d 133, 139 (3d Cir. 2006) (holding that there is no risk that physical force might be used against another to commit the offense of *possession* of a pipe bomb, regardless of whether the pipe bomb had a legitimate purpose or not) (emphasis in original). Establishing a link between possession of a firearm and potential violence "requires unwarranted 'factual assumptions.'" Id. at 521 (quoting United States v. Singleton, 182 F.3d 7, 10 (D.C.Cir. 1999)). Possession of a firearm can take an array of non-violent forms, including self-defense, hunting,

---

[1] At this point in the complaint, it is stated that the "conspirators believe AGRON ABDULLAHU was a sniper in Kosovo." See Footnote 6. Mr. Adbdullah asserts that at no time was he ever a sniper in Kosovo or anywhere else. Mr. Abdullah was a child when the conflict in the region he is from began, and only sixteen when he came to the United States. See below for a further discussion of this matter.

gun collecting, and target practice, thus weakening the link between possession and violence. Id. (citations omitted).

Furthermore, Section 922(g)(5) carries a statutory maximum term of imprisonment of 10 years. 18 U.S.C. § 924(a)(2). As a lawful permanent resident of the United States with no criminal record, Mr. Abdullahu could potentially face an advisory guideline range of as little as 15 to 21 months imprisonment if convicted of the § 922(g)(5) after trial and only 10 to 16 months imprisonment if convicted by way of guilty plea. See U.S.S.G. §§ 2K2.1(a)(6) and 3E1.1(a). Accordingly, this factor, and the reality that the case could take a year to go to trial, weighs heavily in favor of bail.

### 2. Weight of the Evidence Against the Accused

The weight of evidence alleged against Mr. Abdullahu on the firearms possession charge, if proven, is significant. CW-2, a paid informant, allegedly learned the Duka brothers keep their firearms with Mohamad Shnewer and Mr. Abdullahu. Criminal Complaint, Exhibit B, at paragraph 8. Between January 31 and February 1, 2007, law enforcement officers allegedly observed Mr. Abdullahu carrying a "dark colored rifle style" bag into Dritan Duka's residence. They also allegedly observed Shain Duka carrying a green rifle style softcase from Dritan Duka's residence to Mr. Abdullahu who loaded the case into his vehicle. Criminal Complaint, Exhibit B, at paragraph 48. During that same period, CW-2 allegedly witnessed Mr. Abdullahu bring two firearms - a 9 millimeter handgun and a Yugoslavian semi-automatic rifle into Dritan Duka's residence. Id. Finally, law enforcement officers allegedly observed Mr. Abdullahu teaching several individuals how to fire a shotgun at a shooting range in the Poconos. Id. at paragraph 50.

On the other hand, there are no allegations in the complaint indicating that Mr. Abdullahu

6

knew of the Duka brothers' status as illegal aliens. There can be no criminal liability for aiding and abetting a Section § 922(g)(5) offense without knowledge of or having cause to believe possessor's status as an illegal alien. See United States v. Xavier, 2 F.3d 1281, 1286-1287 (3d Cir. 1993) (conviction for aiding and abetting possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2, is not permissible unless there is evidence that defendant knew or had cause to believe that principal offender was a convicted felon).

Additionally, the active role played by the paid government witnesses is a circumstance that cannot be ignored by this Court. To the extent the government's proofs in any way rest upon those individuals, such allegations must received with some skepticism and should only be considered if reliable corroborative evidence, e.g., tape recorded statements by Mr. Abdullahu, are produced.

Accordingly, when viewed in conjunction with all of the other factors weighing in favor of bail, this factor should not preclude bail in this case.

### 3.    History and Characteristics of the Accused

Mr. Agron Abdullahu was born in Gilan, Kosovo (Yugoslavia) in 1982. He is the eldest of Sejdulla and Vaxhide Abdullahu's four children. Kosovo has a long history of ethnic conflict between the majority Albanian group and the minority Serbian group. In 1989, Serbians, led by Slobodan Milosevic, took over control of Kosovo. Initially, the Albanians responded to the takeover and corresponding repression with peaceful and passive resistance. In 1992, the people of Kosovo held free elections and formed a parallel ethnic Albanian government. Ethnic tensions continued, however, and by 1998 the Serbian government began a crackdown against the Albanian uprising. Serbian security forces began a mass genocide in Kosovo, indiscriminately

killing civilians, including women and children. Government-sponsored massacres of 10,000 people spurred the exodus of over 1 million refugees from Kosovo. In March 1999, after Serbia's refusal to sign a peace accord for the settlement of the conflict in Kosovo, NATO began a bombing and occupation of the region which lasted until June 1999 when Milosevic capitulated and agreed to withdraw all Serbian security forces from Kosovo.

     Mr. Abdullahu, his parents, three siblings, and grandmother were among the Albanian refugees fleeing Kosovo in 1999. Only sixteen years old at the time, Mr. Abdullahu walked over thirty miles with his family from Kosovo to Macedonian border. The family arrived at a United Nations refugee camp where they remained for five weeks, sleeping in tents in 20 degree weather, sharing limited resources with thousands of other refugees, and waiting for a lottery system to determine their future. After five weeks, the Abdullahu family's name came up in the lottery and they learned that they were being given documents to travel to the United States.

     The family entered the United States at Fort Dix military base in New Jersey. Catholic Charities arranged free housing for the family, bought food and furnishings for the home, and arranged employment for Sejdulla and Vaxhide at ShopRite supermarkets. Mr. Abdullahu and his siblings were enrolled in school. Mr. Abdullahu attended Williamstown High School for one year before dropping out. While a student, Mr. Abdullahu began working at ShopRite part-time and later became a full-time employee once he left school.

     The Abdullahu family is eternally grateful to the United States. The United States' participation in the Kosovo refugee lottery system allowed the Abdullahu family to escape war-ravaged Kosovo intact. The family has taken full advantage of their new life in America. Vaxhide Abdullahu and three of her children have become naturalized United States citizens. Sejdulla's is a

lawful permanent resident and his citizenship application is currently pending. Mr. Abdullahu has also obtained lawful permanent resident status. Sejdulla, Vaxhide, and Mr. Abdullahu have moved steadily up through the ranks of the ShopRite company. Mr. Abdullahu started out working maintenance in the bakery department, but quickly found his niche as a bread baker, the position he held at the time of his arrest. The family's proudest accomplishment has been being able to purchase their own home, owned jointly by Mr. Abdullahu and his mother.

Mr. Abdullahu has also found America a wonderful place for pursuing his own passions. He enjoys mechanical projects and has spent a great deal of his free time refurbishing cars and a boat. He is also a gun enthusiast. He was issued a firearms Identification card by Monroe Township, New Jersey and also obtained a legal gun permit to purchase a handgun. Mr. Abdullahu enjoyed learning how to use his weapons and occasionally spent time at firing ranges.

In sum, Mr. Abdullahu is a serious and hardworking young man with no criminal history. He loves his life in America and credits the American government with saving his family from death and separation. Given the great feeling of indebtedness he has toward the United States, he insists that he would never do anything to harm the people of his new homeland. If Mr. Abdullahu were released on bail, he would be released to a supportive family, to live in a house of which he is a partial owner. For all of these reasons, Mr. Abdullahu respectfully contends that this factor weighs heavily in favor of bail.

### 4. Danger to the Community

With respect to the final factor - danger to the community - the Third Circuit has stated that the legislative history of the Bail Reform of Act of 1984 makes clear that "the drafters aimed toward a narrowly-drafted statute with the pretrial detention provision addressed to the danger

from 'a small but identifiable group of particularly dangerous defendants'." Himler, 797 F.2d at 160 (quoting, S.Rep. No. 225, 98th Cong., 1st Sess. 6-7 (1983)). See also Perry, 788 F.2d at 100 (liberty interest in freedom is not violated by 18 U.S.C. § 3142(e) in authorizing the pretrial detention of "persons found to be dangerous in a very real sense; distributors of dangerous drugs and users of firearms in the commission of crimes of violence"). Mr. Abdullahu is not a danger to the community. As discussed above, Mr. Abdullahu is a lawful permanent resident of the United States with no criminal record who owns property in the community. He is charged with aiding and abetting a non-violent offense and faces a minimal term of imprisonment if convicted of the charge after trial. He is not charged with - and there is no evidence to support - any terror-related activity.  If Mr. Abdullahu were released on bail, he would be released to a supportive family, to live in a house of which he is a partial owner, and to a job he has held for many years. Any risk of flight is non-existent as Mr. Abdullahu and all of his family live in Williamstown, New Jersey, the only home they have known since fleeing Kosovo, their war-ravaged country of origin.

Additionally, Mr. Abdullahu offers the Court numerous conditions, consistent with the Bail Reform Act of 1984, to further overcome any presumption of flight risk and community danger.  These conditions are volunteered by Mr. Abdullahu in an effort to demonstrate that conditions of release are available that will both assure his appearance and protect the community. The conditions offered are as follows: a $150,000 bail secured with the posting of his home in Williamstown, New Jersey, which is valued at $150,000 and has equity of approximately $55,000($50,000 from this property); the posting the home of family friend, Ray Million, also in New Jersey, which is valued at $325,000 and has equity of approximately $120,000($95,000 from this property); and $5,000 in cash; submission to house arrest with electronic monitoring; restrict

travel to his residence in Williamstown, New Jersey, attorney's office, and work; and third party custodian to be provided by Vaxhide Abdullahu who resides in the home jointly owned by her and Mr. Abdullahu. Counsel believes these onerous restrictions both overcome any presumption of flight risk and curb any real ability to endanger the community.

In sum, the defendant submits that given his lack of any criminal record, his strong family ties, the availability of substantial property holdings for security, and his willingness to submit to rigorous conditions of home confinement, and the minimal evidence proffered by the government to establish dangerousness, he clearly does not fall within the "small but identifiable group of particularly dangerous defendants" that Congress intended to be detained under the Bail Reform Act. Accordingly, he respectfully requests that he be released on bail with the conditions set forth above.

          Respectfully,

          LISA EVANS LEWIS
          Assistant Federal Public Defender

          Julie A. McGrain, Esq.
          Research & Writing Attorney
          On the Brief

          Attorneys for Defendant
          Agron Abdullahu

cc:    R. Stephen Stigall, Assistant United States Attorney
       Rich DiGiacomo, U.S. Pre-Trial Services Officer
       Agron Abdullahu